1662 United States v. Gary Stephen Wykle. At this time, would Attorney Lazaro Barr please introduce herself on the record to begin? Good morning, judges. My name is Lydia. I am a counsel for Mr. Gary Stephen Wykle. Your honors, in this case, the judge erred. Let me ask you, are you going to reserve time for rebuttal? Do you want to reserve a minute or two? I'm sorry? Are you going to reserve time for rebuttal? No. Okay, so go ahead. Thank you, Judge. The judge, the court erred when it, in this case, determined there was no conflict between counsel and his client. And I say that, judges, because when we look at docket 78 and docket 90, letters by Mr. Wykle, and we look at the one that was filed by counsel. Counsel, let me ask you a question. Yes, Judge. When you look at the submission on the motion to withdraw the plea, it outlines what, from counsel's perspective, was going on. It doesn't, and then at the sentencing, the court said to the, the attorney said to the court that he was still pressing the motion to withdraw. Right. And then the court denied it. But the attorney never went on to say that there were reasons beyond what were contained in his report to the court about the motion to withdraw the plea as to conflict of interest. Correct, Your Honor. That is so. And so what are we to make of that? I mean, my thinking is that the court was derelict in not probing. But on the other hand, the attorney, if there were reasons beyond what was contained in the plea withdrawal as grounds for withdrawal, the court didn't, I mean, the attorney didn't bring it to the court's attention. Okay. If I may try to have that clear. In docket 78 and docket 90, Wickel explains that he had told his counsel prior to signing the plea agreement that there were errors of fact in the plea and errors of fact that counsel did nothing about them from docket by, by counsel Aguayo, which is 85 judge. He says, I told him, sign it or go to trial. Now, counsel should have tried to find out if those errors alleged by Wickel were true or not. That was prior to signing the plea agreement. And that is what Mr. Wickel in docket 78 explains to the court that he had told counsel prior to signing the plea agreement, prior to going to court and pleading guilty that there were errors and matters which were not true. Now, those matters were swept under a rug by counsel Aguayo. If it is true that he told his client, take it or leave it, that's it. Government is not going to change those facts. So that was an issue that was between them prior to that plea being taken. Now, another matter that was between them, Your Honor, was that. Well, what does that mean? I'm sorry. I don't understand what that explanation means. He's still at the plea admitted to the fact the government's facts. Okay, version of facts, judges, are a matter that you get done already from the government. But I think that counsel has a duty to determine if what his client is signing is true or not. And if his client says it is not, to find out if that is true or not. And that never happened here. And I think that that is one of the issues between Wickle and counsel Aguayo. Wickle, in the change of plea, after the facts are read to him, he accepts everything. He's accepting everything. So one of the issues here, and I'm jumping to the sentence, is if he's contesting that Mr. Aguayo played fast and loose on him or was ineffective, it may not necessarily be the plea can be vacated at that point because from what the judge says, he covered everything. But there's an issue, and I know there's a memo by Attorney Aguayo to the judge, and I believe that memo was – the U.S. was never privy to that. I believe it's an ex parte memo. I don't think the U.S. was privy to that. But to the judge, Mr. Aguayo, the attorney, basically explains, I now have a conflict. I have to be there at sentencing for a client who's making or imputing these violations maybe of the code of conduct or that he was ineffective. So isn't that a stronger argument at the time of sentencing that maybe another attorney should have been brought in, at least for sentencing, and then try to challenge everything else, not Mr. Aguayo, because he did not challenge his own performance or, as Mr. Aguayo is saying, if I want to withdraw that plea, I'm going to have to say the defendant perjured himself maybe. Which he did. He had to file a motion. That motion is lengthy. That motion states that Huicol is a liar, that he is guilty, that he was playing games. Can I back you up a little bit? Or go back to the question that Judge Helpe was asking. At sentencing, what conflict existed between your client and his counsel? The way that I see it is this, Judge. Guidelines are part of a sentence. There is a plea here that has a guideline, determination by counsel, and that could have never happened before that judge. 41 months, Huicol had a prior case. That plea agreement states he is a one of criminal history. That is not so. That plea agreement doesn't have any point for victims. There were over 100 victims stated in the indictment. So I don't think I understand. In answer to my question, the conflict that existed at sentencing between your client and his attorney was? Well, counsel did not find errors with the PSR. None at all. He should have objected to the PSR. He should have defended the guidelines that he gave his client. If there were six points more because there were victims, and he did not at that time put them in the agreement with counsel for the government, he should have thought that out. Besides that, Judge, he was not a criminal history one. He was a criminal history two. At page four and five of that plea, it states very clear that there are no other matters to be taken into account by the court. I mean, just playing off of your answer to Judge Michael Cabo's question, I'm still trying to figure out your answer to my question, which is at sentencing when he renewed his request to withdraw because of conflict, was he obligated at that point to bring to the court's attention what he perceived to be the conflict, or would the burden have been on the court to probe the conflict before simply saying denied? Counsel did bring it up to the court prior to being withheld sentence. He brought it up. The court denied it, and counsel went on. Now, when Mr. Aguayo went on, he did not raise any objections as to the PSR, criminal history, guideline points, the facts, nothing of that. So I think that at that time there was certainly a conflict between the client and Mr. Aguayo. But the point is the moment of the conflict was when the attorney brought up that I have a conflict. So that would have been a reflection on prior interaction between the attorney and the defendant. What you're arguing is what happened subsequent to the court denying the motion, which may be ineffective assistance of counsel at that point, but that's not necessarily evidence of a conflict of interest existing at the moment he made his request to withdraw. So I'm trying to figure out what is it that constituted the conflict at the moment he made his request. Well, the first time, Your Honor, that counsel asked to be able to withdraw, he wrote a motion. That motion created a conflict. That motion, that 15-page motion became the backbone of the court's opinion and order. Counsel Aguayo testified against his client. That alone brought up a conflict, in my view, Judge. Any other questions for Mr. Calvo or Ms. Thompson? Okay, thank you, counsel. Let's hear from the government. At this time, would Attorney Inbert Fernandez please introduce himself on the record to begin? Good morning, Your Honor, and may it please the court, Ricardo Inbert Fernandez for the United States. There was no conflict of interest in this case, and the court properly inquired as to the existence of one. Your Honor, there are two distinct moments in this case. I didn't see any inquiry at sentencing. The attorney asked to withdraw because of conflict, and the court denied it. I didn't see any further inquiry beyond that, unless you're referring to the affidavit that the attorney had already filed, and we're supposed to assume that we're to draw an inference from that. Yes.  Yes, Your Honor. When Weichel appraised the court of the fact that Attorney Aguayo refused to file a motion to withdraw the guilty plea, the court launched an inquiry into any potential conflict of interest between Weichel and Attorney Aguayo there, and Attorney Aguayo filed a motion in response, clearly detailing out his reasons for not filing the motion, which would be that he thought there was no legal basis for the motion. You don't have access to that motion, right? That's the ex parte motion, right? Yes, Your Honor, but I do because it was submitted to the court, to the appellate court, and was, I believe, unsealed recently. Okay, so the document below is restricted, but for appellate purposes, you've read that? Yes, sir, I have, yes, Your Honor. Okay, so for all purposes, what he's saying in that motion is if I have to defend him as to this or raise these points, then I'm basically going to have to admit that there was perjury on his behalf or because, you know, I'm not lying, my client is lying, and that's the whole issue, isn't that a conflict? Well, Your Honor, I think that it's important to note that when you look at what Weichel alleged in his pro se statements and what Attorney Aguayo said in his motion, there really aren't any factual disputes or discrepancies at play. All that Attorney Aguayo did in that motion was put Weichel's factual allegations in context and then framed them against the relevant legal backdrop in the case. So I think saying that Attorney Aguayo testified against Weichel or disagreed with Weichel's affirmations is misguided because, again. But when the court issued its order after the affidavit had been submitted, the court said that based upon the affidavit, it was denying the motion to withdraw the plea. And it didn't really say anything about the conflict other than the motion to withdraw is denied. So it didn't really even refer to the affidavit as a basis for denying the withdrawal motion based upon conflict. It was no analysis of that. Well, Your Honor, I think that's – and let me clarify that I am understanding your question. You're asking me specifically about the court's denial of Attorney Aguayo's motion to or request to withdraw as counsel on his belief that he had created a conflict of interest by answering the court's inquiry? Yes. Well, that or whether there was any other basis at the time that the sentence in hearing took place as to whether there was any other basis for the court making a determination about a conflict of interest. There was just no inquiry. Well, it's sentencing when the attorney once again renewed the motion to withdraw. There was just no inquiry from the court as to what is the basis. And I assume that's because the court presumed that whatever was covered in the affidavit, there was nothing new. Yes, Your Honor. That is our position. Well, is that correct? I'm sorry. Is that appropriate for the court to just make that assumption without inquiring if there's anything that had come up since the submission of the affidavit? No, Your Honor. I don't think that that would be an improper assumption or that it was an assumption at all. In his request to withdraw as counsel, Attorney Aguayo said clearly that he believed he had created a conflict by answering the court's questions regarding why he did not file a motion to withdraw the guilty plea. However, and as we set out clearly in our brief, counsel does not create a conflict of interest simply by responding to a court's questions or inquiry regarding why they did not take the client's preferred course of action in a case. And besides, Your Honor, the court was in that moment in a position to view both Wykle's pro se statements and Attorney Aguayo's submission and conclude, ably conclude, that there was no conflict of interest in Attorney Aguayo continuing to represent Wykle. And, Your Honor, you have also expressed concerns with sentencing, but the record shows that Attorney Aguayo ably represented Wykle at sentencing. He filed a sentencing memorandum in which he argued for mitigation based on a number of factors, specifically and most importantly, Wykle's health and age. And the record shows that he was successful in doing so because at the end of the day, the court at sentencing imposed a variant sentence precisely on those grounds. At the start of sentencing, to circle back to the question Judge Thompson was asking to your colleague, did the court have an obligation to inquire then when the defense attorney said, I'm moving to withdraw again, I have a conflict of interest? Or did the attorney have an obligation to make clear the conflict at that point? No, Your Honor. I think the sentencing transcript shows that at that moment, Attorney Aguayo was merely rehashing his earlier request and his earlier. How do we know that? Because, and I believe I don't have the record right in front of me, but it is my recollection that Attorney Aguayo told the court, as I have previously argued to this court, I believe that I should, that I have a conflict of interest. And that clearly is a callback to Attorney Aguayo's statements in the motion he filed, the motion in compliance he filed to the court in response to the initial inquiry about a conflict of interest when Attorney Aguayo refused to file the motion to withdraw the guilty plea. And, of course, there was no conflict of interest at that point either. Your Honor, if I may, I'd like to address. Let me just before you do that, let me just ask you a question. Again, this, as a matter of course, isn't it the better practice if there is a, you know, before a sentencing and somebody, the attorney raises, there's a possible conflict of my client, appoint another counsel or something. Isn't it the better practice to appoint another counsel? He could have, he or she could have raised these issues, but they also could have denied it maybe after hearing from the counsel. Isn't that the better practice? Well, Your Honor, I think. Or is it just within the judge's discretion? Well, Your Honor, I think the answer to your question would be that it is in the judge's discretion. The judge in this case was clearly satisfied that there was no conflict of interest between Attorney Aguayo and Weichel and whether or not assigning a new counsel at that point would have been the best course of conduct does not answer the question of whether the court abused its discretion by doing so or not. I'm sorry. I should have asked your sister counsel. Was the defendant made aware of the affidavit? Did the defendant get a chance to read the affidavit filed by counsel? Well, Your Honor, I believe he did because he filed. And, yes, I don't believe I know he did because he filed a subsequent pro se filing in which he directly responds to some assessments made by Attorney Aguayo in his motion. Your Honor, I'd like to address certain points. The first is whether the fact that Weichel told Attorney Aguayo that there were certain statements that were wrong in the stipulation of facts in the plea agreement is problematic in this case. And that specific claim of error was and my sister counsel argued here today that she argued here today that Attorney Aguayo should have at that point tried to figure out what facts were wrong, if he could fix that or undertaking a course of conduct similar to that. If I may, please. Okay. Taking a course of conduct similar to that. And I'd like to point out that that is not a claim of error that is presented in Weichel's opening brief. And I would also like to point out that at that point, Attorney Aguayo fully complied with his obligations to his client when he advised, well, if you don't agree with the facts, if you don't agree with what you're pleading to, then you should go to trial. So he properly educated his client about the options that he had at that point. Thank you. One last question I have. Yes, Your Honor. Assuming we affirm Mr. Weichel still has his things, he still can bring us to a 2255, am I correct? Yes, Your Honor. And you understand that would be the more appropriate vehicle? Yes, Your Honor. And I'd like to also point out that Weichel does not make an ineffective assistance of counsel claim in his opening brief beyond that to say that his counsel was conflicted out. So any other claim of ineffectiveness was not raised by Weichel in this case. Okay. Any further questions? Okay. Thank you very much. Thank you, Your Honor. Have a good day. Thank you. That concludes the argument in this case. Call the next case.